WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>      Plaintiff,<br><br>vs.<br><br>Rodney Audie Belvado,<br><br>      Defendant. | CR 05-0014-PHX-EHC<br><br>**ORDER** |

## Background

Rodney Audie Belvado (Defendant) was indicted January 11, 2005, for Crime on an Indian Reservation (CIR) for First Degree Murder (Dkt. 9):

> On or about December 8, 2004, in the District of Arizona, within the confines of the San Carlos Indian Reservation, Indian Country, Rodney Audie Belvado, an Indian, did, with premeditation and malice aforethought, willfully kill and murder Homer Jess Stevens, Sr.

The Indictment noted "THE FOLLOWING SENTENCING FACTORS ALSO APPLY:"

    1.   The victim was vulnerable; and

    2.   Defendants' conduct was extreme."

1  Defendant was arrested December 12, 2004 and has been in
2 custody since that date.
3  Attorney Richard L. Juarez was appointed to represent
4 Defendant December 22, 2004.  He filed a Motion May 19, 2005
5 to Suppress Statements Defendant "made to interrogatory law
6 enforcement officers on December 12, 2004 because such
7 statements were involuntarily made in violation of the Fifth
8 Amendment to the U.S. Constitution and and (sic)/or <u>Miranda</u>
9 <u>v. Arizona</u>, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
10 (1966)." (Dkt. 27).
11  Juarez was withdrawn as appointed counsel after his
12 appointment as an Assistant Public Defender. Mark A. Paige
13 was appointed May 26, 2005 from the Criminal Justice Panel to
14 represent Defendant. (Dkt. 29).
15  After a number of continuances on Motions of Defendant
16 (Dkts. 14, 23, 31, 34, 40, 45, 52, 53, 54, 65), the Motion to
17 Suppress was partially heard on April 25, 2006, with a
18 continued hearing set for May 12, 2006. (Dkt. 73).
19 <u>Motion to Suppress</u>
20  The Ninth Circuit had occasion in <u>U.S. v. Haswood</u>, 350
21 F.3d 1024 (9th Cir. 2003) in reversing an Order of this Court
22 which suppressed statements made by Haswood to a government
23 agent, to set forth legal principles to be considered in
24 resolving a suppression motion. (pgs. 1027-1029).
25 (p. 1027)
26  A confession is involuntary if coerced either by
  physical intimidation or psychological pressure.
27
28

> A confession accompanied by physical violence is <u>per se</u> involuntary, while one accompanied by psychological coercion is not.
>
> The totality of the circumstances contains no 'talismanic definition' of voluntariness (citation omitted). Courts instead often consider the following factors: the youth of the accused, his intelligence, the lack of any advice to the accused of his constitutional rights, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as deprivation of food or sleep.'

(p. 1028)

> Suspects will naturally adopt various phrases that an officer used during questioning. These phrases may even show up in written statements...Nothing suggests however, that Agent Kirk influenced anything other than Haswood's word choice. This is not evidence of coercion.

(p. 1029)

> Even misrepresentations by law enforcement, while reprehensible, do not necessarily evidence coercive conduct. (citation omitted).

Agents Louis Moran and Auggie Belvado testified at the suppression/voluntariness hearing on April 25, 2006. (Tr. pgs. 4-69).

Agent Moran has been a Bureau of Indian Affairs (BIA) Agent on the San Carlos Indian Reservation for approximately thirteen years; before that he was a BIA Police Department Officer for eleven years.

Agent Belvado had been a Special Agent with the BIA for two years. He had previously been with the Tribal Police Department for four years. He is a member of the San Carlos Tribe. Agent Belvado had a family relationship with Defendant's adopted parents. Agent Belvado testified that he met the Defendant sometime in 2002 at a family picnic. He

1  had little contact with Defendant and he never coached him.
2  He had no knowledge about any difficulties Defendant may have
3  in understanding or learning problems. Belvado is a common
4  name on the Reservation.

5       On December 9, 2004, at about 1:00 a.m., Agent Belvado
6  called Agent Moran about a "murder scene involving the murder
7  of Jess Homer Stevens on the San Carlos Reservation." Moran
8  went to the scene and was briefed by Agent Belvado and they
9  did a cursory walk through the murder scene near Vernon
10 Steele's residence. Moran saw an Indian male lying face down
11 in a camp fire under a "shade" near the Steele residence.

12      Moran observed that the victim had been burned and his
13 skull was crushed, with part of the brain exposed.

14      There were a number of people who had been drinking at
15 the Steele residence when Moran arrived. Several were
16 interviewed at the residence; others were interviewed later.
17 Two of them were arrested at the scene for outstanding arrest
18 warrants.  All interviews at the scene occurred while seated
19 in an Agent's vehicle.  Defendant was reported by several
20 persons as being at the Steele's residence that evening.

21      The Agents first interviewed Defendant on December 10,
22 2004, to see what information he had.  Defendant was asked to
23 come to the Agents' office and he did so voluntarily.  His
24 mother came with him.  Defendant was not arrested or in
25 custody.  He was not a suspect at that time.  The interview
26 office was approximately 20'x 20';  both Agents were present
27 for the interview; it was conducted by Agent Moran.  It was
28 not a crowded room. Defendant recalled "Vernon Steele" saying

-4-

1  that there was a person (the "old man") lying on the fire.
2  Defendant said that Vernon told everyone who was outside to
3  leave. Defendant said he left at that time.
4     Based on their later interviews with other persons, Moran
5  decided to re-interview Defendant as a possible suspect.  On
6  December 11, 2004 they learned that he was away from the
7  Reservation.
8     Agent Moran testified that Defendant's mother by adoption
9  Rose Belvado called the morning of December 12th, inquiring
10 about why they had been looking for Rodney.  She was told
11 that the investigation was continuing and they wanted to talk
12 to him again.  They offered to go to her house or for Rodney
13 to come to their office.  Agent Moran testified that she was
14 not ordered to bring Rodney.
15    Defendant and Mrs. Belvado arrived at approximately 11:50
16 a.m.
17    Defendant was asked to go into the office where he had
18 been interviewed earlier.  Mrs. Belvado was told she could
19 wait or come back in about an hour.  She did not ask to be
20 present at the interview and she left. Defendant did not ask
21 to have her at the interview.
22    Defendant was told that the interview would be recorded
23 and the machine was turned on before he was advised of his
24 Miranda rights. The rights were read to him from a form.
25 (Exh. 1).  Defendant and Agents Moran and Belvado signed the
26 form.  Defendant was given the Waiver of Rights form and he
27 signed it without asking any questions.
28

Agent Moran conducted the interview; he testified that during the interview, which lasted approximately twenty to thirty minutes, Defendant initially denied having anything to do with the death of Jess Stevens.[1]

Later, during the interview, Defendant told the Agents that he had a brief discussion with Homer Jess about Jess making some statement about a tribal election in which Defendant's uncle had been defeated for a council seat. This is the first time that the Agents learned about this circumstance. Defendant said Jess' remarks angered him; he confronted Jess at the shade house and there was no one else there.  Defendant claimed that Jess swung at him and in doing so fell off his chair. Defendant said he kicked Jess three times in the chest and admitted hitting Jess in the head with a piece of wood or a log.  Throughout this interview Defendant denied using a white pole when he struck the victim.

Defendant was asked if he was willing to write out a statement and he agreed to do so; he was given a pen and paper. (Exh. 2). Agent Belvado remained with Defendant until another agent (Christina Billagody) came to sit with Defendant.

It took Defendant about a half hour to complete his written statement.  In the statement, (which ended at 1:42

---

[1] The victim is variously referred to as Jess Homer Stevens, Homer Jess or Jess.

1 p.m.), Defendant reported that he used the white metal pole
2 and provided details concerning his assault on the victim.
3     After Agent Moran read the statement, he discussed with
4 Defendant on tape the reported use of the white pole, (the
5 so-called Second interview) and Defendant explained why he
6 included the white pole in his written statement.
7     Agent Moran called the Tribal Police Department to come
8 to his office so that he could inform them that Defendant had
9 admitted killing Jess Stevens and to give them the
10 opportunity to file charges.  Defendant was then taken into
11 tribal custody.
12     Defendant's mother returned to the office after he was
13 taken into tribal custody.  She was told that Defendant was
14 responsible for Jess Stevens' death.  She responded "Oh".
15     Agents Moran and Belvado testified that they were unaware
16 that Defendant had any kind of learning problems or
17 difficulty in understanding. They testified that he responded
18 appropriately to questions.  Agent Moran had no prior
19 contacts on the Reservation with Defendant before this
20 incident.
21     Photographs were taken at the crime scene.
22     On cross-examination, Agent Moran acknowledged that he
23 was aware that Agent Belvado was related in some way to
24 Defendant.  He testified that prior to the December 12
25 interview, Agent Belvado had advised him that they were
26 cousins, but they didn't know each other.
27
28

Agent Moran testified that during the interview he told Defendant that people had "identified him" and that he was asked to tell his side of the story.

Agent Moran testified that what Defendant said at the December 12 interview was significantly different from what he related on December 10 and he noted the differences.  This included the fact that Defendant had not reported any discussion with the victim about his Uncle's defeat for councilman and that the victim had upset him in mentioning that matter.

Agent Moran agreed that he told Defendant several times during the interview that they had evidence about Defendant's kicking "Steele" (Stevens), putting him in the fire and using a log and a pole.  Moran acknowledged that at the time of the December 12 interview he did not have a witness who claimed to see Defendant actually assault Stevens.

Defendant's counsel called Mrs. Belvado, Defendant's mother, as a witness at the suppression hearing. Her testimony did not differ materially with testimony of Agents Moran and Belvado.

She ultimately testified that she was aware early on that Defendant was being investigated concerning the death of Jess Stevens.  After denying that she had done so, she admitted contacting a prospective witness in the case, as well as a relative of the victim.

Defense counsel called the Defendant as a witness. Before he was sworn in, counsel withdrew him as a witness.

Defense counsel called Susan Parrish, a Psychologist, who "evaluated" Defendant on April 12, 2005. The results of her evaluation are set forth in a letter to Attorney Juarez under date of April 25, 2005. (Exh. 56). She was cross-examined by Government counsel, with a time to continue the cross-examination, to be scheduled at a later date. (Tr. p. 32).

Defendant's Motion to Continue the Evidentiary Hearing (Dkt. 79) was denied as moot May 10, 2006, the parties having agreed to submit the Motion to Suppress on the record and without a continued evidentiary hearing. (Order dated May 10, 2005). (Dkt. 87).

Looking at the totality of circumstances preceding Defendant's Tribal arrest on December 12, 2004, the Court finds that Defendant's statements were not coerced either by "physical intimidation or psychological pressure."

The Court has considered the following factors in reaching its finding that the statements made by Defendant on December 12, 2004, were voluntary and there was no coercive conduct:

(1) His date of birth is November 3, 1984. He was 20 years of age December 9, 2004;

(2) He attended (bused daily) to Liberty High School in Globe, a public school off of the reservation, for two years and graduated there; he played on the High School football team; he graduated from the Eighth grade at a BIA school at San Carlos;

(3) He was in special education programs for some period of time; he was a slow learner, and was absent on occasion;

(4) He knew how to drive a car; he did not have a driver's license and was not allowed to drive a family vehicle;

- 9 -

(5) He probably drank with his friends; he was not allowed to drink at home;

(6) He was advised of his constitutional rights; he was not restrained or threatened in any manner;

(7) The time for the interview(s) on December 12, 2004, including the time for Defendant to write his statement, covered approximately an hour and a half;

(8) The interview room was not cramped or coercive;

(9) Agent Moran conducted the interviews and Agent Belvado sat in a chair behind Defendant; it was not a prolonged questioning; a third agent sat in the room for a part of the time while Defendant wrote out his statement;

(10) There was no threat of physical punishment or deprivation of food.

During the Suppression Hearing Defendant's counsel called Susan Parrish, a Psychologist, to testify concerning her evaluation of Defendant on April 12, 2005 (her written report is dated April 25, 2005), and her opinion with respect to "susceptibility." The Court finds that Dr. Parrish's testimony does not provide a basis for suppressing Defendant's voluntary statements.

The admission of any evaluations or opinions by Dr. Parrish will be determined at the time of trial. <u>See</u>: <u>U.S. v. Newman</u>, 849 F.2d 156, 163, (5th Cir. 1988).

Accordingly,

**IT IS ORDERED** denying Defendant's Motion to Suppress. (Dkt. 27).

DATED this 2nd day of June, 2006.

_____
Earl H. Carroll
United States District Judge